IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRENDA LYN JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 06-0128-BH-M |
| EQUIFAX, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**FINDINGS OF FACT; CONCLUSIONS OF LAW
AND ORDER**

This action is before the Court on a motion for summary judgment (Docs. 47-49) filed by Trans Union LLC ("Trans Union"), the sole remaining defendant in this litigation.[1]  Upon consideration of the motion , plaintiff's response in opposition thereto (Doc. 52), Trans Union's reply (Docs. 54-55), and all other pertinent portions of the record, the Court concludes that the motion for summary judgment is due to be granted.

**FINDINGS OF FACT**

Upon consideration of all the evidence of record, the Court finds that the following facts are either undisputed or uncontradicted by the plaintiff:

1.      During Plaintiff Brenda Lyn Johnson's ("Johnson's") marriage to John Norman Murphy ("ex-husband") the couple opened numerous joint credit accounts,

---

[1] Equifax, Inc. And Equifax Credit Information Services, Inc. were dismissed on April 17, 2002 (Doc. 15), pursuant to the stipulation of the parties.

including MBNA account no. …0581 ("MBNA account").[2]  Ex. A, pp. 23-24; Ex. G, pp. 50-60.  The couple was divorced in March 1997.  Plaintiff's First Amended Complaint ("Compl."), ¶ 6.

2.      After their divorce in 1997, Johnson's ex-husband took all of the couples joint credit cards and paperwork associated with those credit cards and moved to Texas.  Ex. A, pp. 26-27.  Johnson did not attempt to close or remove her name from the joint accounts she held with her ex-husband.  Ex. A, p. 155.  Included in those credit cards was the disputed MBNA account.  Ex. A, pp. 23-24.

3.      Johnson's ex-husband subsequently filed for Chapter 13 Bankruptcy on May 11, 1998.  Ex. C, pp. 67-96.  Johnson's ex-husband's bankruptcy was concluded on June 20, 2003.  Ex. C, p. 103.  Among the accounts that were discharged in his bankruptcy was the MBNA account, jointly held with Johnson.  Ex. C, pp. 9-10.

4.      Johnson first learned her husband had filed for Bankruptcy at some point in 1998 when she applied for a loan at Regions Bank ("Regions").  Ex. A, p. 31.[3]

5.      By at least September 1998, MBNA reported Johnson's MBNA account to Trans Union with a comment of "included in bankruptcy," indicating the account was

---

[2] That account was originally reported to Trans Union as account no. …0667.  The number was later changed and reported to Trans Union as …0581.  Ex. B, ¶ 10.  The account statements from MBNA reflect that the account number was changed in October 1998 after the account was closed.  Ex. G, pp. 59-60.

[3] Johnson testified that she called her ex-husband some time after she went to Regions Bank for a loan.  Johnson could not recall a specific date but believed it to be in the March of 1998.  Ex. A, pp. 27-32.

included in a bankruptcy proceeding. Ex. D, ¶ 3. On June 20, 2003, Johnson's ex-husband's bankruptcy was concluded. Ex. C, p. 103. In June 2003, the "included in bankruptcy" comment was removed from Johnson's MBNA account and has not been reported since then. Ex. D, ¶ 5.

6. Johnson's claimed damages are based on the following events:[4] a loan sought from Regions Bank in 1998, financing sought from Ford Motor Credit in 2005, and qualifying to go on food stamps from 1998 to 2000. Although Johnson appears at first blush to take issue with this undisputed fact (Opposition Brief at 1-4), she in fact only argues that she is entitled to compensation for, *inter alia*, her alleged "shame, humiliation, embarrassment" resulting from these three events

7. In March 1998, Johnson claims she attempted to get a loan with Regions Bank ("Regions") in Notasulga, Alabama. Ex. A, pp. 28-30. Johnson alleges she could not obtain a $1,000 loan with Regions because she was told by a Region's employee that she was "in bankruptcy." Ex. A, p.29. Regions never obtained Johnson's Trans Union consumer report.[5] Ex. D, ¶ 6.

---

[4] Johnson testified that her only claims for damages relate only to Regions, Ford, and going on food stamps. Ex. A, p. 142. To the extent Johnson attempts for the first time in her opposition brief to assert new claims relating to consumer reports provided to Sears and Surpas and firm offers of credit inquiries by Applied Card, Capital One and DMCCB, such claims are not timely asserted either with respect to the applicable procedural rules governing motions for summary judgment or with respect to the applicable statute of limitation which would bar such claims.

[5] The Fair Credit Reporting Act defines "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing…." 15 U.S.C. § 1681a(d). "Consumer reports" are more

3

8.	Johnson alleges that she attempted to purchase an automobile with financing from Ford Motor Credit ("Ford") in 2005 and was denied that financing. Ex. A, pp. 86-88. No Trans Union consumer report was ever obtained by Ford. Ex. D, ¶ 6.

9.	Johnson claims she was forced to go on food stamps from 1998 to 2000 because she qualified for them based on her income. Ex. A, pp. 54-55. No Trans Union report was used to determine her qualification or need for food stamps. Ex. D, ¶ 6.

10.	Johnson claims she suffered mental and emotional distress as a result of Trans Union reporting the comment of "included in bankruptcy" on her MBNA account. Compl., ¶ 12. Johnson never saw her Trans Union consumer report until after suit was filed and after the "included in bankruptcy" comment was removed. Ex. A, pp. 35-36.

11.	Johnson has never contacted Trans Union to dispute any information appearing on her Trans Union consumer file. Ex. A, pp. 36-37, Ex. B, ¶ 12. Prior to the filing of this lawsuit in August 2005, Johnson never saw a Trans Union consumer report with a comment on her MBNA account of "included in bankruptcy." Ex. A, pp. 35-36. By that time the comment had been off her file for two years. Ex. D, ¶ 5.

12.	Trans Union has never reported a bankruptcy record on Johnson's Trans Union credit file that showed she had personally filed for bankruptcy. Ex. D, ¶ 7.

---

commonly known as "credit reports." The term "credit file" refers to "all the information on that consumer recorded or retained by a consumer reporting agency." 15 U.S.C. § 1681a(e)(g).

**CONCLUSIONS OF LAW**

**A.    Standard of Review.**

1.    The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. Rule. Civ. P. 56 (c); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).

2.    When faced with a motion for summary judgment, the non-movant bears the burden of coming forward with sufficient evidence that proves every element of a claim on which such non-movant has the burden of proof. *See*, *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986); *Celotex*, 477 U.S. at 317.

3.    The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . . [o]nly factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Secretary of Dep't of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004)(citations omitted).

4.    A defendant moving for summary judgment is not required to disprove every element of the plaintiff's case to prevail. Instead, the defendant is required to

demonstrate only that plaintiff will be unable to meet his or her burden of proof on any essential element of his or her claims.  As FED. R. CIV. P. 56(c) points out, summary judgment should be granted when it becomes apparent that the plaintiff is unable to "make a showing sufficient to establish an element essential to that party's case, and on which that party would bear the burden of proof at trial."  *Andrews v. Trans Union Corp.*, 7 F. Supp. 2d 1056, 1064 (C.D. Cal. 1998) (*citing Celotex Corp. v. Catrett*, 477 U.S. at 322).  Therefore, Trans Union can obtain summary judgment simply by demonstrating a lack of evidence on any element of Plaintiff's case.

**B.      Plaintiff Cannot Recover Under the FCRA**

5.      Johnson's claims are all based on the "included in bankruptcy" comment that temporarily appeared on her MBNA account.  Compl. ¶¶ 9, 14, 20, and 25; Ex. F, pp. 2-3 (Pls. Answers to Interrogatory Nos. 4 and 8).  Johnson has asserted a claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b) and a common law claim of invasion of privacy.

6.      To recover on a claim for negligent violation of §1681e(b), Johnson must prove:  (a) a consumer report published to a third party was, in fact, inaccurate, (b) Trans Union failed to follow reasonable procedures to ensure the maximum possible accuracy of its consumer reports, and (c) she suffered an injury caused by Trans Union's negligence.  *Heupel v. Trans Union LLC*, 193 F. Supp. 2d 1234, 1239 (N.D. Ala. 2002); *see also Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002).

7.     As an initial matter, Johnson's claims based on the alleged denial by Regions of a loan in 1998 and having to go on food stamps in 1998 are barred by the FCRA's statute of limitations. Section 1681(p) of the FCRA states that a Plaintiff must bring an action to enforce any liability "within two years from the date on which the liability arises."[6] The limitation period for the tort begins on "the date upon which the erroneous information is transmitted by the credit agency to the potential user." *Barron v. Trans Union Corp.,* 82 F. Supp. 2d 1288, 1293 (M.D. Ala. 2000)(citing *Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446, 449 (5th Cir. 1988)). No discovery rule applies to violations of the FCRA. *TRW Inc. v. Andrews,* 534 U.S. 19, 23 (2001). Thus, even assuming that Trans Union furnished a consumer report in 1998 to some of Johnson's creditors (which it did not as shown below), any FCRA claim based on such report are barred by limitations.[7]

8.     Johnson argues that the limitations period was tolled while she was a member of the class action styled Franklin E. Clark v. Experian Information Solutions, et al., Civil Action No. 8:00-1217-24, et al.(D. S.C.). The Clark class action was filed on April 20,

---

[6] At the time of the alleged violations, section 1681p of the FCRA stated: "that a claim must be brought within two years of the violation unless the defendant has materially and willfully misrepresented any information required under this title to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this title, the action may be brought at any time within two years after discovery by the individual of the misrepresentation."

[7] While Johnson has only made claims related to reports allegedly issued to Regions and Ford, Ex. A, p. 142, there were consumer reports furnished to Sears on 8/5/00 and Supras Corp., a collection agency, on 2/8/99. Ex. E, pp. 2-3. Any claim based on consumer reports furnished to Sears and Surpas, or even Applied Card, Capital One and DMCCB, would likewise be barred by limitations. In addition, Johnson denied ever applying for credit with those entities. Plaintiff's App. Ex. 10, p. 196.

2000. Plaintiff's App. Ex. 3, p. 2. Thus, even assuming Trans Union furnished a consumer report to Regions in 1998, which Trans Union denies and Johnson has failed to prove, any claim related to an alleged denial of a loan by Regions was barred as of March 2000. Although Johnson's went on food stamps at some unspecified date in 1998, the limitations as to that claim would have run at least a year and four months prior to the filing of the Clark class action. Johnson opted out of the class action on September 10, 2003 and did not file her original complaint until August 23, 2005. Any time remaining on the limitations period for Johnson's food stamp claim would, therefore, have expired at least by May of 2004.

      9. A "consumer report" is a report prepared for third parties while a "consumer disclosure" is the consumer reporting agency's file it reveals to the consumer, not a third party. *Spector v. Equifax*, 338 F. Supp. 2d 378, 379 (D. Conn. 2004). Reports prepared solely for the consumer do not constitute "consumer reports" under the FCRA. *See Hyde,* 861 F.2d at 449. Section 1681e(b) does not allow a consumer to sue the consumer reporting agency for creating, possession, or revealing to a consumer credit files containing adverse information. Because a prerequisite to a cause of action under §1681e(b) is evidence showing that a consumer report was furnished to a third party, all of Johnson's FCRA claims fail as a matter of law. *Jackson v. Equifax Information Services*, LLC 167 Fed. Appx. 144, 146 (11th Cir. 2006); *Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir. 1991); *Davis v. Equifax Info. Servs.,* 346 F. Supp. 2d 1164, 1174 (N.D. Ala. 2004); *see also Washington v. CSC Credit Servs.,* 199 F.3d 263, 267 (5th Cir. 2000).

10.     As stated above, Johnson's damage claims are based on: 1) alleged denial of a $1,000 loan by Regions, 2) the alleged denial of a car loan from Ford Motor Credit, and 3) going on food stamps. Johnson has proffered no evidence, however, that Trans Union prepared a consumer report for any of those third parties. In contrast, Trans Union has proffered evidence that it never furnished Johnson's consumer report to Regions or Ford. And with respect to the food stamp issue, Johnson concedes that she was given food stamps based on her income, not on her consumer report. Ex. A, pp. 54-55.

11.     Johnson has asserted that her claim of food stamps was related to her inability to get the loan from Regions. Ex. A, pp. 54-55. She theorized that if she had gotten the Regions loan, she would not have needed food stamps. Ex. A, p. 54. However, even if viewed as derivative of the alleged Regions loan denial that claim fails because, as stated above, Johnson has proffered no evidence that a Trans Union report was obtained in relation to the Regions loan.[8]   Ex. D, ¶ 6.

12.     Even if Johnson could establish that a Trans Union report was furnished to a third party, Trans Union's reporting of the MBNA account with the "included in bankruptcy" comment was accurate. It is undisputed that the MBNA account was included in her ex-husband's bankruptcy. Ex. C, pp. 9-10. It is also undisputed that Trans Union was reporting the "included in bankruptcy" comment only on Johnson's MBNA account. Ex. D, ¶ 5.

---

[8] For the same reasons, Johnson's claim for mental anguish fails. Without a consumer report furnished to a third party, Johnson cannot demonstrate a §1681e(b) violation. Without a §1681e(b) violation, Johnson has no claim for mental anguish. *See* Section IIB(d)(iv), *infra*.

9

Consequently, Johnson's claim is without merit. *See e.g.*, *Heupel v. Trans Union*, et al., 193 F. Supp. 2d 1234, 1240 (N.D. Ala. 2002) (court found account "technically accurate" and no violation of § 1681e(b) when reported as "included in bankruptcy" despite the fact that the Plaintiff, had not filed for bankruptcy protection). *See also*, *Dickens v. Trans Union Corp.*, 18 Fed. Appx. 315, *318, 2001 U.S. App. Lexis 19443, **8 (6th Cir. August 23, 2001) (Trans Union accurately reported an account as "included in bankruptcy," even though it was not the plaintiff's bankruptcy). *Cf.*, *Todd v. Associated Credit Bureau Servs., Inc.,* 451 F. Supp. 447, 448 (E.D. Pa. 1977)(information that was accurate four years prior to the report was not "stale and obsolete information" which required deletion inasmuch as the statute proscribes only information which antedates the report by more than seven years.).

  13. In addition, this information was not misleading. If it had been considered by a creditor, it would have been understood that Johnson was a joint obligor on an account that had been included in a bankruptcy, not that she had personally filed for bankruptcy. *Dickens* 18 Fed. Appx. at 318. Trans Union accurately reported that the MBNA account was "included in bankruptcy."

  14. It is also important to note that the FCRA does not require error free consumer reports. *Sepulvado vs. CSC Credit Services, Inc.*, 158 F.3d 890, 895-96 (5th Cir. 1998). Consumer reporting agencies must follow reasonable procedures to ensure the maximum possible accuracy of their reports. *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986). Section 1681e(b) does not establish strict liability. In order to defeat a motion for summary judgment on §1681e(b), Johnson "must have minimally presented some evidence from

which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report." *Stewart v. Credit Bureau,* 734 F.2d 47, 51 (D.C. Cir. 1984); *Whelan v. Trans Union Credit Reporting Agency,* 862 F. Supp. 824, 829 (E.D.N.Y. 1994). Johnson cannot rest upon a showing of a mere inaccuracy and expect the burden to shift to Trans Union to establish the reasonableness of its procedures. *Stewart,* 734 F.2d at 51. Johnson bears the burden to establish that the procedures followed by Trans Union were not reasonable. *Podell v. Citicorp Diners Club, Inc.,* 914 F. Supp. 1025, 1032 (S.D. N.Y. 1996); *Stewart, 734* F.2d at 51, N.5. This she has failed to do. Johnson has not only failed to identify a single alleged unreasonable procedure followed by Trans Union, but admits that she does not even know what Trans Union's procedures are. Ex. A, p. 65.

15.     Summary judgment is appropriate when a plaintiff fails to show, in any respect, that the agency's procedures breached any standard of reasonable care. *Tinsley v. TRW,* 879 F. Supp. 550, 552 (D. Md. 1995); *Batdorf v. Trans Union,* 2002 U.S. Dist. Lexis 9489 *16 (N.D. Cal. May 13, 2002); *Nelski v. Trans Union*, 86 Fed Appx. 840, 2004 U.S. App. Lexis 663 (6th Cir. Mich. 2004). *See also*, *Thompson v. San Antonio Retail Merchant Ass'n.,* 682 F.2d 509, 513 (5th Cir. 1982). When a consumer "only attacks the propriety of the report," summary judgment is proper. *Zahran v. Trans Union Corp.,* 2003 U.S. Dist. Lexis 5089 (N.D. Ill., March 31, 2003).

16.     One of the essential elements of maintaining an FCRA claim is that a plaintiff must present evidence that she suffered an injury. *See Cahlin*, 936 F.2d at 1161; *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473-76 (2d Cir. 1995). The burden of proof is on

the plaintiff to show that his or her damages were caused by the defendant's violations of the FCRA. *Jackson v. Equifax Information Services*, LLC 167 Fed. Appx. 144, 146 (11th Cir. 2006); *See Casella,* 56 F.3d at 473. The FCRA provides a remedy only for consumers who are actually damaged by a failure to comply with the FCRA. *See Pettus v. TRW Consumer Credit Serv.*, 879 F. Supp. 695, 697 (W.D. Tex. 1994).

17. Johnson has proffered no evidence and has admitted she has no proof that Regions relied on a Trans Union report to deny her a loan. Ex. A, pp. 29-30. In contrast, Trans Union's has proffered evidence that it never furnished Plaintiff's Trans Union consumer report to Regions. Ex. D, ¶ 6. Consequently, even assuming Johnson was denied a loan by Regions, she has failed to establish that her "injury" (the denial) was caused by a Trans Union consumer report furnished to a third party.

18. Similarly, Johnson has proffered no evidence and has admitted she has no proof that Ford relied on a Trans Union report to deny her a loan. Ex. A, pp. 42-43. In contrast, Trans Union's has proffered evidence that it never furnished Plaintiff's Trans Union consumer report to Ford. Ex. D, ¶ 6. Consequently, even assuming Johnson was denied a loan by Ford, she has failed to establish that her "injury" (the denial) was caused by a Trans Union consumer report furnished to a third party.

19. As to Johnson's claim for damages related to her going on food stamps, admits that she was eligible for food stamps based solely on her income at the time. Ex. A, pp. 53-

54.[9]  If there was an injury related to her going on food stamps it was not caused by Trans Union.  Johnson has proffered no evidence that the Alabama Department of Human Resources, which runs the food stamp program, or any other Alabama food stamp agency, ever obtained a Trans Union consumer report for Johnson.  In contrast, Trans Union's has proffered evidence that it never furnished Plaintiff's Trans Union consumer report to the Alabama Department of Human Resources.  Ex. D, ¶ 6.  Consequently, Johnson has again failed to establish that her going on food stamps was caused by a Trans Union consumer report furnished to a third party.

20.     To the extent Johnson seeks damages for mental stress and emotional distress, she has failed to demonstrate that she suffered any actual injury (credit denial) caused by Trans Union, a requisite to recovery of such damages.  *Riley v. Equifax Credit Info. Servs.*, 194 F. Supp. 2d 1239, 1248, (S.D. Ala. 2002)(Plaintiff's claim of damages for being upset at credit denials failed where Plaintiff provided no evidence he was denied based on a Trans Union report).  *See also*, *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001)( A plaintiff must show proof of actual injury for damages to be awarded for mental or emotional distress under the FCRA.).  Johnson has failed to proffer any evidence to either establish that her mental anguish was caused, directly or indirectly, by a Trans Union consumer report or to substantiate that such mental anguish actually ever existed. In contrast, Johnson's stress, by her own admission, was caused by the fact that she did not have a job

---

[9] The Court also notes that, even if Johnson had received the Region's loan she sought in 1998, her income would still have qualified her for food stamps.

which paid a lot of money and she, therefore, qualified and received food stamps. Johnson has not alleged or established that this was in any way caused by a Trans Union consumer report. Ex. A, p. 57.

21.     Inasmuch as Johnson has failed to establish that Trans Union negligently violated the FCRA, the Court need not even address Johnson's allegation that Trans Union willfully violated the FCRA. *Breese v. TRIADadvantage Credit Srvs.,* 393 F. Supp. 2d 819, 823, (D. Minn. 2005). The mere existence of inaccuracies in a consumer report does not in itself amount to an act in conscious disregard of the plaintiff's rights supporting a finding of willful noncompliance. *Zahran v. Trans Union Corp.,* 2003 U.S. Dist. Lexis 5089 (N.D. Ill., March 31, 2003).

22.     To the extent that Johnson asserts a a claim of invasion of the right of privacy, the FCRA provides qualified immunity for consumer reporting agencies for claims in the nature of defamation, invasion of privacy, and negligence, unless the consumer shows that the information was furnished with "malice or willful intent to injure." 15 U.S.C. §1681h; *Short v. Allstate Credit Bureau*, 370 F. Supp. 2d 1173, 1185 (M.D. Ala. 2005); *McCloud v. Homeside Lending*, 309 F. Supp. 2d 1335, 1342 (N.D. Ala. 2004); Young v. Equifax Credit Info. Servs., Inc. , 294 F.3d 631 (5th Cir. 2002); *see also Cushman v. Trans Union Corp.,* 115 F.3d 220, 229 (3rd Cir. 1997). Johnson has failed to demonstrate not only that the subject report contained inaccurate information but that the allegedly false information was

furnished with malice *or* willful intent to injure. [10]  *McCloud,* 309 F. Supp. 2d at 1342. Consequently, Trans Union is entitled to summary judgment on this claim as well.

## CONCLUSION AND ORDER

For the reasons stated above, the Court concludes that there exists no material issue of fact and the Defendant is clearly entitled to judgment in his favor as a matter of law. It is therefore **ORDERED** that Defendant's motion for summary judgment be and is hereby **GRANTED** and that **JUDGMENT** be entered in favor of the Defendant, Trans Union LLC, and against the Plaintiff, Brenda Lyn Johnson, the plaintiff to have and recover nothing of the defendant.  Costs are taxed against the plaintiff.

**DONE** this 31st day of May, 2007.

s/ W. B. Hand<br>
SENIOR DISTRICT JUDGE

---

[10] Similarly, under Alabama law, consumer reporting agencies are granted qualified privilege for consumer reports under common law and that privilege can only be defeated by a plaintiff bringing forth evidence that consumer reporting agency acted with malice. *Garrett v. Equifax Credit Info. Serv., Inc.* 1993 U.S. Dist. Lexis 463, *2 (S.D. Ala. Jan. 20, 1993); *Burrows v. Credit Bureau, Inc.* 1987 U.S. Dist. Lexis 5406, *8 -9 (N.D. Ala. June 23, 1987); *Liberty Loan Corp. of Gadsden,* 410 So.2d 45, 50 (Ala. 1982).  Thus, even without the FCRA's preemption, Johnson would be required to show actual malice to recover against Trans Union on her invasion of the right of privacy claim.